# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

CEREMONY OF ROSES ACQUISI-
TION LLC,

     *Plaintiff,*

v.

VARIOUS JOHN DOES, VARIOUS
JANE DOES, and ABC COMPANY,

     *Defendants.*

No. 4:26-cv-285 MAL

## MEMORANDUM AND ORDER

Plaintiff Ceremony of Roses Acquisition LLC—the company licensed to sell country music artist Zach Bryan's merchandise—seeks an emergency temporary restraining order, preliminary injunction, and an *ex parte* seizure order barring defendants identified only as "Various John Does, Various Jane Does, and ABC Company" from selling bootleg merchandise outside Zach Bryan's thirty-nine-city international stadium tour.  Doc. 6.  The court **GRANTS** Ceremony of Roses's request—with some modifications.

## Background

Zach Bryan is kicking off his next tour in St. Louis this weekend.  (Doc. 1 at ¶ 13).  His tour merchandise is made and sold by Ceremony of Roses, who has the exclusive right to sell Zach Bryan's official tour merchandise with trademarked designs using his name.  (*Id.* at ¶¶ 6, 9.)  But Ceremony of Roses knows from prior concerts that bootleggers will inevitably flock to the tour to sell unauthorized knock-off apparel that infringes on Zach Bryan's trademarks.  (Doc. 9 at ¶¶ 8–12.)  But the names of the bootleggers are unknown, and Ceremony of Roses doubts they will identify themselves at the concert, much less show up in court if identified and sued.  (Doc.

1

8 at ¶¶ 13–14).  So Ceremony of Roses sues the bootleggers as "Various John Does, Various Jane Does, and ABC Company" for trademark infringement, asking this Court for an emergency injunction barring the bootleggers from selling unauthorized merchandise during Zach Bryan's "Heaven on Tour" concerts and an order sanctioning the seizure of the bootlegger's counterfeit goods.  (Doc. 1.)

## Analysis

The Trademark Counterfeiting Act of 1984 amended the Lanham Act to expressly authorize *ex parte* injunctions to combat fly-by-night counterfeiters, which some courts had begun to impose under their inherent equitable authority anyway. *See, e.g.,* Steven N. Baker, *The Never-Ending Seizure Order: How Courts Have Granted Immortality to Congress's Mayfly*, 26 Cardozo Arts & Ent. L.J. 369, 374 (2008); Rakoff & Wolff, *Commercial Counterfeiting and the Proposed Trademark Counterfeiting Act*, 20 Am. Crim. L. Rev. 145, 209–224 (1982); *Joel v. Various John Does*, 499 F. Supp. 791, 792 (E.D. Wis. 1980).  While the Lanham Act had always authorized courts to enjoin infringements of licensed trademarks "according to the principles of equity[,]" 15 U.S.C. § 1116(a); Pub. L. 93–596, § 34 (1946) (original Lanham Act), the amended Act allows for *ex parte* orders to seize goods, records, counterfeit marks, and the means of making such marks.  15 U.S.C. § 1116(d)(1)(A); Pub. L. 100–667, § 1503 (1984 amendment).

*Ex parte* seizure orders are not automatic.  The Act imposes several requirements on an applicant.  Ceremony of Roses appears to have satisfied those requirements.  It has notified the acting U.S Attorney for the Eastern District of Missouri, *see id.* § 1116(d)(2), (Doc. 8 at ¶ 26); submitted an affidavit from Alan Sitchon, Vice President of Tour for Ceremony of Roses, *see id.* § 1116(d)(3)(A), (Doc. 9 at ¶ 2); submitted a proposed order containing the information the Court needs to issue a seizure order under § 1116(d)(5), *see id.* § 1116(d)(3)(B), (Doc. 6-1); will provide security to compensate any wrongful seizures, *see id.* § 1116(d)(4)(A), (Doc. 6-1) (proposing an order requiring a bond); and presented "specific facts" allowing the Court to clearly find, at this early stage, that:

(i)     "an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title" because Ceremony of Roses has no other legal remedy that would prevent unauthorized sales without allowing bootleggers to conceal infringing goods and sell them later or otherwise seize the goods sold by unknown bootleggers who intentionally and in bad faith keep their identities secret;

(ii)    "the applicant has not publicized the requested seizure";

(iii)   "the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services" because Ceremony of Roses possesses an *exclusive* right to use Zach Bryan's marks, (Doc. 9 at ¶¶ 3, 10), and bootleggers are likely to sell unauthorized Zach Bryan merchandise at the St. Louis concert;

(iv)   "an immediate and irreparable injury will occur if such seizure is not ordered" because unauthorized sales of lower-quality goods harms the reputation and value of Zach-Bryan-branded marks and because of the unique nature of how bootleggers do business, which is to sell merchandise but not identify themselves or show up in court if they are caught. Having an ex-parte order that allows Ceremony of Roses to seize the bootlegged goods is the most Ceremony of Roses expects to recover from these unknown entities, (*id.* at ¶ 15) (when confronted, bootleggers "refuse to identify themselves or provide aliases, or simply flee the area only to resume sales elsewhere"), (*id.* at ¶ 20) (bootleggers also do not show up in court);

(v)    "the matter to be seized will be located at the place identified in the application," which is the 3-mile radius surrounding The Dome at America's Center in St. Louis (excluding any brick-and-mortar retailers), as this is would be where bootleggers would logically operate to benefit from attendance at, and association with, the concert in that venue, (Doc. 6-1 and Doc. 9 at ¶ 8, 14);

3

(vi)     "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application" because bootleggers have no right to sell infringing merchandize, which they could move to another location and offer for sale again if not confiscated, and because any inadvertent seizure of merchandise that is not infringing may be remedied in a subsequent hearing in this case; and

(vii)    "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person" because, again, bootleggers in similar circumstances have relocated or "disappeared" when approached and are difficult to identify at subsequent shows. (Doc. 8 at ¶ 14).

15 U.S.C. § 1116(d)(4)(B).   Based on Ceremony of Roses' briefing and the *ex parte* hearing, the Court will grant Ceremony of Roses' *ex parte* request for a seizure order under 15 U.S.C. § 1116.

*          *          *

Ceremony of Roses also asks for a temporary restraining order (TRO) and that the TRO be issued without notice to Defendants on account of their unidentifiability. As Federal Rule of Civil Procedure 65 recognizes, district courts have equitable power to issue TROs.  *See also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 n.5 (8th Cir. 1981) (en banc).  The Court may grant a TRO when a movant shows that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that a restraining order is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dataphase Sys., Inc.*, 640 F.2d at 113 (same factors).  "While no single factor is determinative, the probability of success factor is the most significant."  *Home Instead, Inc v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted).

4

First, there is likelihood of success on the merits. "Trademarks are protected against infringement, that is, the use of similar marks on similar or related products or services if such use creates a likelihood of confusion." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 932 (8th Cir. 2021) (citing both 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1114(1)(a)). Zach Bryan's trademarks are likely to be infringed on here because the bootleggers use similar marks on similar products that likely create confusion. Zach Bryan holds trademarks registered with the Patent and Trademark Office. (Doc. 1 at ¶¶ 7–8) (listing registrations licensed by Ceremony of Roses). Only Ceremony of Roses has exclusive rights to use those trademarks for Zach Bryan's upcoming tour. (*Id.* at ¶¶ 9, 13.) But unidentified bootleggers have used, and will likely continue to use, counterfeit marks in the production and sale of their unauthorized merchandise around Zach Bryan concerts. (*Id.* at ¶¶ 14–18.) And based on the materials submitted before the Court, these designs strongly resemble the registered marks such that consumers would likely confuse the "bootleg" merchandise with authorized items. (*Id.* at ¶ 15–16.) Nothing suggests these unidentified bootleggers have any right to use the marks in the manner Ceremony of Roses expects. Thus, Ceremony of Roses has demonstrated a strong likelihood of success on a trademark-infringement claim.

Second, Ceremony Roses will likely suffer irreparable harm without a TRO. The Lanham Act provides that "upon a finding of a likelihood of success on the merits," a plaintiff "shall be entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). That presumption applies here, and no defendant has appeared in this case to rebut it. Even without the presumption, there is still likely irreparable harm at stake. Consumers would be misled by the knock-off goods, resulting in both lost sales (which damages could not remedy given the bootleggers' evasive tactics) and reputational harm to Ceremony of Roses regarding the quality of their merchandise. (*Id.* at ¶¶ 15–17.)

Third, a TRO is unlikely to result in substantial harm to anyone. Ceremony of Roses has the exclusive right to use these trademarks, so any defendant subject to the seizure and restraining orders would necessarily be liable for trademark

5

infringement anyway. (*Id.* at ¶ 9.) Further, any defendant who may claim to be able to lawfully sell Zach Bryan goods will have an opportunity to present that defense before this Court.

Fourth and last, a TRO serves the public interest by preventing consumer confusion and combating deceptive behavior that undermines our nation's system of intellectual property protections.

Therefore, Ceremony of Roses satisfies the traditional principles governing preliminary relief.

*          *          *

Because Ceremony of Roses asks this Court for an *ex parte* TRO (*i.e.,* without notice to Defendants), additional requirements apply under Federal Rule of Civil Procedure 65(b)(1). Ceremony of Roses must also demonstrate "specific facts in an affidavit or a verified complaint" that "clearly show [] immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition," and Ceremony of Roses' attorney must "certify[] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Based on what has been filed and presented, the Court finds that an *ex parte* TRO may be issued here. As Ceremony of Roses explained, it is nearly impossible to identify the bootleggers until they have already started infringing upon the trademarks at issue. (Doc. 8 at ¶ 13–15.) By then, Ceremony of Roses already will have suffered irreparable harm. Ceremony of Roses would lose "[s]ubstantial" merchandising income, (*id.* at ¶ 11), which almost certainly would not be recovered from the offending fly-by-night bootleggers. Therefore, Ceremony of Roses stands to suffer immediate and irreparable injuries if notice is required, and its counsel has certified in writing that notice cannot be given under these circumstances.

## Conclusion

For the reasons stated above, the Court grants the following relief.

**IT IS HEREBY ORDERED** that:

1. Defendants and any person or entity acting in concert with them are temporarily restrained from manufacturing, distributing, or selling

6

merchandise that infringes upon Zach Bryan's trademarks. These trademarks consist of those specified in Ceremony of Roses' Complaint. *See* (Doc. 1 at ¶ 7–8.)

2. Federal, state, and local law enforcement officers[1] may seize and impound any infringing merchandise that is found for sale

   a. within 3 hours of the beginning or end of Zach Bryan's March 7, 2026, concert in St. Louis, Missouri; and

   b. within 3 miles of The Dome at America's Center in St. Louis, Missouri.

   These law enforcement officers are permitted to seize merchandise only within the time periods and at the locations described.

3. This order is conditioned upon Ceremony of Roses's filing with the Clerk of this Court a bond, certified check, or cash in the amount of $5,000 no later than March 7, 2026, to secure any costs and damages as may be suffered by a wrongfully restrained party.

4. Any Defendant found shall be immediately served and given a receipt if merchandise is seized. Ceremony of Roses shall immediately reveal any identified Defendants to the Court.

5. Defendants may submit their objections to this Court or apply to modify or dissolve this Order on 2 days' notice. *See* Fed. R. Civ. P. 65(b)(4).

6. This temporary restraining order shall remain in effect for 14 days unless a further order of the Court dissolves or extends it. *See* Fed. R. Civ. P. 65(b)(2).

---

[1] Ceremony of Roses requested to use off-duty officers, *and those acting under their supervision*, to execute the anticipated seizures. Doc. 6-1 at 4. Because 15 U.S.C. § 1116(d)(9) requires a "Federal law enforcement officer" or "State or local law enforcement officer" to execute seizures, ***non-officers acting under the supervision of an officer may not lawfully seize merchandise under this Order.*** The Court is not aware of any binding authority requiring the officers to be on-duty at the time of seizure, so Ceremony of Roses may use off-duty officers.

7. The Court orders Ceremony of Roses and any Defendants to appear at an in-person hearing on March 11, 2026, at 3:00 p.m. Central at the Thomas F. Eagleton Courthouse in Courtroom 12S regarding any potential modifications to this Order.  Ceremony of Roses shall attend this hearing and deliver all seized merchandise to the custody of the Court, and bring any other evidence obtained that would support the full length and scope of the relief it has requested.

**SO ORDERED,**

This 5th day of March, 2026.

_Maria A. Lanahan_

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

8